**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

VSI HOLDINGS, INC., et al.,

    Plaintiffs/Counter-Defendants,

                                                        Case No. 03-CV-70225-DT

v.

                                                        HONORABLE DENISE PAGE HOOD

SPX CORPORATION,

    Defendant/Counter-Plaintiff.

_____/

**ORDER REGARDING ADDITIONAL MOTIONS IN LIMINE**

**I.    INTRODUCTION**

This matter is before the Court on additional motions in limine filed by SPX and motions in limine filed by VSI which VSI claims the Court has yet to rule upon. Responses and replies have been filed.

As this Court noted previously, the deadline for filing trial motions in limine was August 2, 2004. (4/29/04 Scheduling Order) SPX attached a transcript of a March 15, 2005 hearing with its motions in limine wherein the Court indicated that the issue of whether a document is privileged can be raised in a future motion in limine. (See, 3/15/05 Hrg. Tr.) The hearing related to SPX's request to perform a forensic search of VSI's computers. SPX also notes the Local Rules and this Court's Practice Guidelines indicating that submission of motions in limine one week prior to trial is contemplated.

A review of the latest SPX motions in limine shows that these motions are beyond the scope of the motions in limine contemplated by the Court at the March 15, 2005 hearing, other than the motion in limine regarding Ms. Toth's e-mail. However, the Court notes that the Court

contemplated that issue would occur "immediately." (See, 3/15/05 Hrg. Tr., p. 25)("If you see fit to add this to your privilege log, you need to do so *immediately*, notify the other side, and then notify me so I can prepare to be prepared.") (italics added). The March 2005 hearing was held more than ten months before SPX filed the motion in limine regarding Ms. Toth's e-mail. It is noted that SPX had possession of Ms. Toth's e-mail in the Fall of 2004. (SPX Toth Motion in Limine, p. 2)

As to SPX's "Supplemental Motion in Limine on Various Issues," SPX does not set forth any reason, other than a footnote addressing the Court to the Local Rules and its practice guidelines, why these arguments could not be raised along with SPX's various motions in limine filed within the dates set forth in the Second Amended Scheduling Order. SPX also does not set forth any arguments how the Local Rules and this Court's general practice guidelines "supercede" an Order entered by the Court, an Order which the parties agreed to during a conference with the Court. In any event, the Court addresses below SPX's motions in limine.

## II.    MOTIONS IN LIMINE

### A.    SPX's Supplemental Motion in Limine

#### 1.    Evidence in an Unrelated Securities Law Litigation

SPX seeks to exclude evidence or argument relating to the case, *Belafey v. SPX*, Case No. 3:04-CV-99 (W.D. N. Car.). In response, VSI argues that the Court denied SPX's previous motion on this issue as premature. VSI states that it would not use SPX's statements in the Securities Fraud Litigation if SPX personnel testify truthfully and consistently in this case, but may use matters related to the Securities Fraud Litigation for impeachment, credibility and substantive admissions. In its reply, SPX claims that the only evidence regarding the *Belafey* litigation submitted by VSI is the "Complaint" in that case. SPX further claims that the *Belafey* litigation is not relevant to the

issues in this case since there are no allegations of federal securities violation and no statutory "safe harbor" provision issue in this case, which are issues in the *Belafey* case.

The Court's review of the *Belafey* Complaint shows that the factual allegations involve the period of July 28, 2003 through February 26, 2004. At this juncture, the *Belafey* case does not appear to be relevant to this case. The Court notes that VSI has not submitted any other evidence from the *Belafey* case, other than the Complaint, which it may seek to introduce for purposes of impeachment or as admissions. The Court grants SPX's motion in limine excluding the Complaint in *Belafey* and any other evidence from that case. However, if SPX opens the door regarding the *Belafey* case, VSI shall have the opportunity to rebut any evidence presented by SPX. Should this situation occur, the parties must address the matter outside the presence of the jury.

### 2.     Evidence or Argument re Section 5.4 of the Merger Agreement

SPX seeks to exclude any evidence or argument that SPX breached Section 5.4 of the Merger Agreement by failing to use its "reasonable best efforts" to close the merger, despite VSI's material breaches of the Agreement. In response, VSI claims that this motion is essentially a motion for summary judgment. Section 5.4 of the Merger Agreement has been at issue in this case, as seen in ¶ 18 of the Second Amended Complaint, according to VSI.

The Court agrees that SPX's motion on this issue is in fact a motion for summary judgment on whether SPX breached Section 5.4 of the Merger Agreement. SPX argues that it was VSI who first breached the Merger Agreement and that such breach was material, and, as a result, any testimony regarding SPX's breach of Section 5.4 is not relevant. As this Court concluded in its Opinion regarding the parties' summary judgment motions, the issue of whether any breach is material is for the jury to decide. (9/30/05 Opinion, pp. 8-9) SPX's motion in limine to exclude

evidence or argument that SPX breached Section 5.4 of the Merger Agreement is denied.

### 3.     Evidence or Argument that SEC Gave VSI a "Clean Bill of Health"

SPX seeks to exclude any evidence or argument that after its 2001 investigation into VSI, the SEC gave VSI "a clean bill of health" or otherwise approved VSI's revenue recognition or other accounting practices, even though SEC regulations preclude such conclusions and the SEC required VSI to restate its prior securities filings.  In response, VSI argues that should SPX raise the fact that the SEC made an inquiry of VSI's revenue recognition policies, the jury should know the result of the SEC inquiry.  VSI further argues that the SEC's inquiry of VSI in 2001 should be ruled inadmissible because SPX did not raise this claim in its May 8, 2001 notice letter to VSI and the issue is not relevant.

In a July 16, 2001 letter to VSI, the SEC wrote VSI saying that its revenue recognition practices violated GAAP and directing VSI to amend its SEC filing to correct this error.  The SEC ultimately required VSI to file amended statements clarifying the narrative discussion of its approach to revenue recognition, but did not require VSI to restate its revenues.

The Court notes that SPX sent a May 8, 2001 letter to VSI indicating SPX's intent to terminate the Merger Agreement.  Any SEC investigation after that date is not relevant to the issue of SPX's reasons for terminating the Merger Agreement on May 8, 2001.  SPX's motion in limine regarding the outcome of the July 2001 investigation by the SEC is granted.  Should SPX raise the SEC July 2001 letter to VSI, VSI shall have the opportunity to respond to such evidence.  Again, the parties must bring this matter to the attention of the Court outside the presence of the jury.

      **4.**      **Evidence or Argument that SPX agreed to any financing related to VSI's Ford ESP Program**

SPX seeks to exclude evidence or argument at trial that, after the signing of the Merger Agreement, SPX agreed to VSI's financing of the Ford ESP Program. SPX claims this evidence is barred by the Merger Agreement's express terms and thus is irrelevant and would confuse the issues, mislead the jury, and unfairly prejudice SPX. In response, VSI argues that SPX is claiming that VSI breached a loan covenant in the Merger Agreement by obtaining outside financing of VSI's Ford ESP Program, even though VSI claims that it was SPX who instructed VSI to obtain that outside financing after the parties executed the Merger Agreement on March 24, 2001. VSI claims that this motion is an untimely motion for reconsideration in that the Court has ruled that the parol evidence rule does not bar evidence of any agreements between the parties after the Merger Agreement was signed on March 24, 2001.

The Court finds that the Court has ruled on this motion. The Court denies SPX's motion to exclude evidence regarding the financing of the Ford ESP project after March 24, 2001.

      **5.**      **Evidence or Argument that "General Business or Economic Conditions" or "Conditions Generally Affecting the Industry" Caused VSI to Increase its Revolving Debt to Finance its Ford ESP Program, When VSI Made a Voluntary Business Decision to Undertake that Program and Its Financing**

SPX seeks exclusion of evidence or argument that the increase in VSI's revolving debt to finance the Ford ESP Program was caused by "general business or economic conditions" or conditions generally affecting the industry in which" VSI competed, and thus did not constitute a "material adverse change" under Section 2.1 of the Merger Agreement that justified SPX's termination of the Agreement. In response, VSI claims that this motion is another untimely motion for reconsideration, that the Court has ruled on the material adverse issue and that SPX consented

to VSI's pursuit of the Ford ESP Program.

The Court finds that this motion is another untimely motion for reconsideration on the Court's ruling regarding the material adverse clause. The Court denies SPX's motion in limine regarding the material adverse clause.

> **6. Evidence or Argument Regarding Matters Occurring after SPX Withdrew from the SEC Registration Statement for the SPX/VSI Agreement, or In the Alternative, After Plaintiffs Filed Suit Against SPX, Other than Proof of VSI's Spoilation**

SPX seeks to exclude evidence regarding matters occurring after SPX's August 7, 2001 withdrawal from the SEC of the Registration Statement for the SPX/VSI agreement ("Registration Statement") and matters occurring after the September 21, 2001 filing of VSI's suit against SPX. In response, VSI claims that SPX is attempting to conceal the true purpose of this motion, which is to exclude the evidence of the value of VSI stock. VSI argues that the Court previously ruled that the alleged "loss" of VSI stock is relevant in the measure of damages in this case. (4/12/05 Opinion and Order, pp. 19-20) VSI claims that even after the Complaint was filed, SPX continued to lead VSI to believe that the merger was possible.

The Court finds that matters occurring after September 21, 2001 of the filing of VSI's suit against SPX is not relevant to the issue of which party breached the contract, especially since any breach by either party would have occurred before the filing of VSI's suit on September 21, 2001. However, any evidence that the Court considered when it reviewed SPX's Alternative Motion for Partial Summary Judgment regarding damages will not be subject to this Order. (See, 9/30/05 Order, pp. 18-19) As to the spoilation of evidence, the Court in its most recent Order entered on March 7, 2006, ruled that if SPX can show that spoilation of evidence is relevant to the remaining issues at trial, then the Court may consider it at that time. SPX's motion in limine on this issue is

granted as more fully set forth above.

> **7. Evidence or Argument that SPX's Notice of Intent to Terminate the Merger Agreement, the May 8, 2001 Press Releases, or SPX's Termination of the Agreement Caused Customers to Stop Doing Business with VSI**

SPX seeks to exclude evidence that VSI lost business as a result of SPX's notice to VSI of SPX's intent to terminate the Merger Agreement, the May 8, 2001 press releases about that notice of intent, or SPX's August 3, 2001 termination of the Agreement. SPX claims the evidence is hearsay. In response, VSI claims SPX chose not to depose the representatives of VSI's former customers, including Ford, General Motors and DaimlerChrysler. VSI further claims that bank personnel and documents show how VSI's financing was restricted as a direct result of SPX's conduct, ultimately leading to VSI's demise.

The Court agrees that hearsay evidence is not admissible. However, without knowledge of what these witnesses will testify to, the Court is unable to determine at this time whether such evidence is hearsay. Mr. Van Conway appears to be a fact witness as well as an expert witness in that Mr. Conway was performing work for VSI while VSI was still in business. The Court denies SPX's motion in limine on this issue without prejudice.

> **8. Evidence or Argument Regarding the Discussion of Service Solutions' 2001 fiscal year-end results in SPX's 10-K for the period ending December 31, 2001 and Similar Statements or Documents**

SPX seeks to exclude evidence regarding the discussion of Service Solutions' 2001 fiscal year-end results in SPX's 10-K for the period ending December 31, 2001 and similar statement or documents, to support VSI's argument that the "same conditions" that caused Service Solutions' 2001 financial performance also caused VSI's own financial reversals. In response, VSI claims that SPX hopes to conceal from the jury its own statements in documents filed with the SEC and publicly

released, which undermine SPX's positions in this case. VSI argues that the status of the general economy and, in particular, the "industry in which VSI" competed are disputed in this case. VSI further argues that SPX claims in this case that there were no general economic conditions or industry conditions which affected VSI's performance in 2001. VSI claims that SPX filed public documents with the SEC in this time frame in which SPX admits not only the existence of these negative economic conditions but also details the impact of the declining economy and automotive industry upon SPX's own financial performance.

The Court finds that any statements made by SPX which may contradict its position that there were no general economic conditions or industry conditions which affected VSI's performance in 2001 is relevant. Any statements made by SPX to the contrary could be deemed an admission that such conditions existed during the relevant time period. The Court denies SPX's motion in limine on this issue.

### 9. Young and Haffey Affidavits

SPX seeks production of the affidavits submitted by counsel for Plaintiffs, Dennis M. Haffey and Rodger D. Young, in opposition to SPX's Motion for *In Camera* Review and Further Relief. The affidavits were submitted to the Court *ex parte*. SPX claims Messrs. Haffey and Young have waived any privilege associated with those affidavits by submitting them to the Court. In response, VSI claims that at the March 2005 hearing on SPX's motion, SPX withdrew any accusations of impropriety of Plaintiffs' counsel, rendering the issue of the attorney declarations moot. VSI further claims that the attorney-client privilege or work product were not waived when Plaintiffs' counsel submitted their affidavits *in camera* which related to the e-mail sent by Peggy Toth.

The Court finds that the issue is moot. Additionally, submission of the affidavits *in camera*

to the Court did not waive the attorney-client privilege or any work product protection. In any event, the Court allowed SPX to depose certain individuals regarding the destruction of evidence issue.

### B.  SPX's Motion In Limine to Admit June 2002 E-Mail from Peggy Toth

SPX seeks to admit a June 17, 2002 e-mail sent by Peggy Toth, a high ranking member of VSI's management, instructing Kevin Movius, an accounting manager at VSI, to delete certain documents from the computer. In response, VSI claims the e-mail is subject to the attorney-client privilege or work product doctrine. The e-mail was sent to a VSI attorney.

The Court finds that the e-mail is subject to the attorney-client privilege or work product doctrine. The Court further finds that the Court allowed SPX to perform extensive discovery on VSI's computers for detecting any spoilation of evidence, including deposing Mr. Movius. Mr. Movius testified that he did not delete or destroy any documents despite Ms. Toth's request. SPX has not submitted any evidence to the contrary. SPX also has not submitted any evidence after its extensive search of VSI's computers as to any evidence of improper deletion of any accounting documents. There is no dispute that Ms. Toth's e-mail was inadvertently produced to SPX. SPX has not shown that any actions by Plaintiffs' counsel or Ms. Toth is subject to fraud. SPX's motion to admit Ms. Toth's e-mail to VSI counsel is denied.

### C.  VSI's Motions In Limine

#### 1.  Motion for Reconsideration

In a letter dated April 17, 2006, VSI's counsel sent a letter to the Court indicating that the Court failed to address two motions in limine in its September 30, 2005 Opinion and Order on the parties' summary judgment motions. The Court initially denied without prejudice VSI's motions

in limine regarding the mend the hold doctrine and advice of counsel arguments in an April 12, 2005 Order, indicating that these issues would be addressed in its order addressing the parties' summary judgment motions. The Court did not expressly address the motions in limine in its September 30, 2005 Opinion and Order. The Court notes, however, that VSI did not file a Motion for Reconsideration or for Clarification of the Court's September 30, 2005 Opinion and Order, which, under E.D. Mich. LR 7.1 must be filed within ten (10) days from the entry of an order. In any event, since trial has begun in this case, the Court considers VSI's April 17, 2006 letter to the Court as a renewed motion in limine of the two issues addressed by VSI in its letter.

### 2. VSI's Motion in Limine Excluding Evidence Alleged Breaches Not Stated in SPX's May 8, 2001 Notice of Termination Letter

VSI seeks to exclude evidence of alleged breaches by VSI which were not stated in SPX's May 8, 2001 Notice of Termination Letter to VSI under the mend the hold doctrine. In response, SPX claims that VSI waived this argument because VSI failed to raise this issue in its summary judgment briefing and SPX did not have knowledge of these breaches when SPX wrote the May 8, 2001 Notice of Termination Letter.

Michigan follows the mend the hold doctrine which limits a contracting party's defenses for nonperformance to those based on explanations given at the time of the nonperformance. In *C.E. Tackels v. Fantin,* 341 Mich. 119, 124 (1954), the Michigan Supreme Court stated:

> Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law.

*Id.* at 124 (quoting *Railway C. v. McCarthy,* 96 U.S. 258, 267 (1878)). Courts interpreting Michigan insurance contracts have held that an insurer is not estopped from asserting a right of which it had

no knowledge at the time benefits were denied. *Provident Life & Accident Ins. Co.,* 176 F.R.D. 246, 249-50 (E.D. Mich. 1997) (there must be an existing right, a knowledge of its existence, and actual intention to relinquish it before a party can waive that right). The Sixth Circuit, applying Michigan law on a breach of contract claim, was faced with a similar posture in this case where two parties raised breach of contract counterclaims in *Chrysler Int'l v. Cherokee Export Co.,* 134 F.3d 738, 742 (6th Cir. 1998). Cherokee asserted that Chrysler breached an agreement by terminating the agreement without the required written notice. Chrysler claimed that Cherokee breached the agreement by selling to resellers in violation of the agreement. The Sixth Circuit noted that both parties may be correct in their allegations of breach against the other. *Id.* at 742. The Sixth Circuit stated that the determining factor in the case was who first breached the agreement and whether such breach is substantial, noting that in Michigan, "'[h]e who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform.'" *Id.* (quoting *Ehlinger v. Bodi Lake Lumbar Co.,* 324 Mich. 77 (1949)). The Sixth Circuit stated that Michigan law indicates that the determination of which breaches are "substantial" is inextricably tied to the particular facts of the case. *Chrysler,* 134 F.3d at 742. The Sixth Circuit found that Cherokee materially breached the agreement before any of the disputes forming the basis for the litigation, therefore, Cherokee could not assert rights under the contract, such as the termination provision, in connection with the disputes at issue. *Id.* at 743.

VSI's mend the hold motion in limine is essentially a summary judgment motion and a defense to SPX's breach of the Debt-Related Covenants claims SPX raised in its summary judgment motions–that because SPX did not give notice of this alleged breach in the May 8, 2001 letter to VSI, SPX cannot now raise the claims because the Termination provision has not been met which

states:

> (c) By Purchaser if the Company shall have breached in any material respect any of its representations, warranties or covenants under this Agreement, such breach shall constitute a Company Material Adverse Effect, Purchaser shall have given written notice to the Company of such breach promptly after learning of the same, and such breach shall not be reasonably cured on or prior to the Closing Deadline.

(Agreement, § 7.1(c)). It is noted that the provision provides "written notice to the Company of such breach *after learning of the same ...*" VSI has submitted no evidence that SPX had knowledge of the alleged breaches of the Debt-Related Covenants when SPX wrote the May 8, 2001 letter to VSI nor did VSI submit any evidence as to "when" SPX learned of these alleged breaches. SPX asserts in its response to the motion in limine that it intends to show at trial that it did not know of VSI's additional breaches on May 8, 2001. In its Memorandum Opinion and Order on this issue, the Court found genuine issues of material fact as to whether VSI breached the Debt-Related Covenants. (9/30/05 Opinion and Order, pp. 5-11) VSI has failed to show it is entitled to summary judgment on this issue or that the mend the hold doctrine applies. VSI's motion in limine on the mend the hold doctrine is denied.

### 3. VSI's Motion in Limine Excluding Evidence that SPX Relied on Advice of Counsel

VSI seeks to exclude evidence that SPX relied on advice of counsel because SPX belatedly waived or made a partial waiver of the attorney-client privilege on a very narrow issue. In response, SPX claims that VSI was allowed to question Stephen Tsoris, SPX's lead transaction counsel regarding SPX's decision to terminate the Agreement.

The reliance on the advice of counsel issue is relevant to VSI's claim that SPX "wilfully" breached the Agreement. Section 7.2 of the Agreement limits VSI's damages to $9,000,000 unless

"wilful breach of a material covenant in this Agreement results in the failure of the closing of the Merger." (Agreement, § 7.2) In its Memorandum Opinion and Order on the damages issue, the Court found that VSI raised sufficient issues of fact to defeat summary judgment on SPX's motion for summary judgment limiting the damages issue.

Mr. Tsoris was deposed on March 25, 2004. When VSI began questioning Mr. Tsoris regarding the termination of the Merger Agreement, SPX's litigation counsel expressly stated:

> Let me just interject that SPX has consented to allow Mr. Tsoris to testify with regard to communications with its lawyers in terms of the attorney/client privilege regarding the issue of termination and the basis for termination from a transactional perspective. We reserve all of other privileges with regard to other subject matters and all other privileges including the work product privilege. So with that you can answer the question.

(Tsoris Dep., pp. 185-86) SPX produced certain documents to VSI which SPX believed fell within the scope of its waiver of the attorney-client privilege. Counsel for VSI responded that the waiver of the attorney-client privilege was insufficient and that SPX still withheld documents that should be produced. (Tsoris Dep., pp. 186-87) When asked what documents VSI's counsel believed were being withheld on work-product grounds, VSI's counsel did not identify the documents but stated, "Well, I reserve our position that that's not a line that's legally viable, but that's obviously not going to be resolved today." (Tsoris Dep., p. 187)

Almost two months later, fact discovery closed on May 21, 2004. VSI did not file a motion to compel production of any documents relating to SPX's waiver of the attorney-client privilege relating to the termination if the Merger Agreement issue. Instead, on August 2, 2004, VSI filed the instant motion in limine seeking to exclude any evidence relating to the waiver of the attorney-client privilege. VSI cites *Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F. Supp. 891, 894 (S.D.N.Y. 1990)

which states that "[a] party who intends to rely at trial on the advice of counsel must make full disclosure during discovery; failure to do so constitutes a waiver of the advice-of-counsel defense." In this case, SPX expressly waived the attorney-client privilege on the termination of the Merger Agreement issue during the deposition of SPX's lead transaction attorney during discovery, almost two months before the fact discovery deadline. VSI did not move to compel any documents VSI thought should have been produced based on the waiver. VSI had full knowledge of the breadth of the attorney-client privilege waiver, had the opportunity to depose Mr. Tsoris and failed to file a motion to compel any documents relating to this issue. VSI's motion in limine to exclude evidence that SPX relied on the advice of counsel when it terminated the Merger Agreement is denied.

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that SPX's Supplemental Motion in Limine (**Docket No. 243, filed January 30, 2006**) is GRANTED IN PART and DENIED IN PART, as more fully set forth above.

IT IS FURTHER ORDERED that SPX's Motion in Limine to Admit Ms. Toth's e-mail (**Docket No. 244, filed January 30, 2006**) is DENIED.

IT IS FURTHER ORDERED that SPX's Motion to Seal (**Docket No. 229, filed December 22, 2005**) is GRANTED.

IT IS FURTHER ORDERED that SPX's Motion for Leave to File Under Seal (**Docket No. 241, filed January 30, 2006**) is GRANTED.

IT IS FURTHER ORDERED that VSI's renewed Motions in Limine to exclude evidence of alleged breaches not stated in SPX's May 8, 2001 Notice of Termination Letter and that SPX relied on advice of counsel when SPX terminated the Merger Agreement are DENIED.

          /s/ DENISE PAGE HOOD  
DENISE PAGE HOOD  
United States District Judge

DATED: April 27, 2006

      I hereby certify that a copy of the foregoing document was served upon counsel of record on April 27, 2006, by electronic and/or ordinary mail.

          s/William F. Lewis  
Case Manager